**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
(Charleston Division)

| | | |
|---|---|---|
| **ANDREW TOLLIVER**, on behalf of Himself and all others similarly situated, | ) ) ) | |
| | ) | Case No. **2:24-cv-00128** |
| Plaintiff, | ) ) | |
| vs. | ) ) | **COLLECTIVE ACTION COMPLAINT** **JURY DEMANDED** |
| | ) | |
| **ALPHA METALLURGICAL RESOURCES, INC., MARFORK COAL COMPANY, LLC, SPARTAN MINING, LLC, ARACOMA COAL COMPANY, LLC, AND PARAMONT CONTURA, LLC** | ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF**
**THE FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT**

I.    **INTRODUCTION**

Following an alternative dispute resolution process ("ADR") and arm's length negotiations, including an in person mediation session facilitated and overseen by an experienced wage and hour mediator, Plaintiff Andrew Tolliver ("Plaintiff") and Defendants Alpha Metallurgical Resources, Inc., Marfork Coal Company, LLC, Spartan Mining, LLC, Aracoma Coal Company, LLC, and Paramount Contura, LLC ("Defendants" or "Alpha") have entered into a Settlement Agreement ("Settlement" or "Settlement Agreement" or "Agreement"), attached as Exhibit 1, that resolves the claims alleged in this matter. The Settlement Agreement is a fair and reasonable resolution of a *bona fide* dispute and warrants this Court's approval.

Plaintiff alleged that Defendants failed to pay him and other similarly situated underground coal mining employees overtime pay for the time they spent performing certain compensable pre-shift and post-shift work. Specifically, Plaintiff alleged that he and other underground coal miners were required to don certain protective clothing and gear (such as, for example, reflective clothing, helmets and boots), as well as gather tools and equipment (such as, for example, radios and self-rescuers) before the start of their scheduled shifts, and that, following their shifts, Plaintiff and other underground coal miners were required to doff their safety clothing and gear and put away their tools and equipment, and that this time was not paid when they worked more than forty (40) hours in a workweek, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"). Defendants continue to deny this and all other related allegations and dispute any liability.

The Parties stipulated to conditional certification, and notice was disseminated to all collective members.  Agreement ¶ 3.  A total of 566 individuals, including Plaintiff, filed opt-in consent forms to join the case.

Following extensive pre-litigation discussions, arm's length negotiations, including a day-long mediation session in Charleston, West Virginia facilitated and overseen by experienced

1

mediator, Dennis Clifford, Esq., the Parties have reached an agreement to settle the matter on behalf of Plaintiff and the 565 other Settlement Collective Members. *See* Exhibit 2, Declaration of R. Booth Goodwin II ("Goodwin Decl.") at ¶¶ 8-15.

Pursuant to the Settlement Agreement, Defendants will pay a Gross Settlement Amount of Two Million Six Hundred Thousand Dollars and Zero Cents ($2,600,000.00) to resolve the matter. Each Settlement Collective Member will receive a Notice of Settlement as well as a check representing their share of the Settlement and will release their FLSA claims against Defendants.

The proposed Settlement Agreement satisfies the criteria for approval of an FLSA collective action settlement because it is a fair and reasonable resolution of a *bona fide* dispute reached by counsel with extensive experience in complex employment law cases, and after arm's-length negotiations assisted by an experienced wage and hour mediator. *See* Ex. 2, Goodwin Decl. at ¶¶ 8-18. Accordingly, Plaintiff respectfully requests that the Court approve the Settlement. Defendants do not oppose this Motion.

## II.    PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS

Plaintiff filed the Action against Defendants on March 15, 2024. ECF No. 1. Defendants filed their Answers to Plaintiff's Complaint on May 28, 2024. ECF Nos. 10-14; Agreement ¶ 2.

On July 16, 2024, the Court granted the Parties' Joint Stipulation and Motion for Entry of Order Approving Conditional Certification and Court-Authorized Notice. ECF No. 29. Following entry of that Order, notice of the collective action was disseminated to: "All current and former hourly employees who, at any time during the three (3) years preceding July 15, 2024, (a) were employed by Alpha Metallurgical Resources, Inc., Marfork Coal Company, LLC, Spartan Mining, LLC, Aracoma Coal Company, LLC, or Paramont Contura, LLC, (b) were engaged in underground mining at any mine owned, controlled, or operated by the foregoing entities, including Allen Powellton, Alma No. 1, Black Eagle, Cedar Grove No. 3, Cedar Grove No. 2,

Checkmate Powellton, Coon Cedar Grove, Davy Branch, Deep Mine 41, Deep Mine 44, Glen Alum Tunnel, Horse Creek Eagle, Jerry Fork Eagle, Kingston No. 2, Laurel Coalburg Tun., Lynn Branch, Panther Eagle, Road Fork 52, Rolling Thunder, Slabcamp, Slip Ridge Cedar Grove, and Stockton 130, and (c) worked more than forty (40) hours in at least one workweek during such period." A total of 566 individuals, including Plaintiff, filed opt-in consent forms to join the case.

Following the conclusion of the opt-in period, the Parties engaged in an extensive alternative dispute resolution ("ADR") process in connection with these claims. This process consisted of ADR-related discovery and an in-person mediation session in Charleston, West Virginia overseen by an experienced wage and hour mediator, Dennis Clifford, Esq. The mediation session took place on March 4, 2025. Agreement ¶ 4.

In order to appropriately inform the ADR process, the Parties exchanged data and information in connection with the claims, including payroll data as well as time data showing the times each individual clocked in and out on time clocks each day (the "Pre-Mediation Payroll Data"). Defendants also provided information about the bonuses paid to Plaintiff and the Settlement Collective Members, as well as the rates of pay and frequency for each one. Finally, Defendants provided certain handbooks and policy documents. The Parties' Counsel participated in a joint video conference to discuss the Pre-Mediation Payroll Data. Plaintiff's Counsel used that data to calculate Defendants' potential exposure and Plaintiff's Counsel shared their exposure model with Defendants' Counsel. This process allowed the Parties to assess the potential liability and possible damages for the asserted claims and engage in informed, good faith, arms-length settlement negotiations. *Id.* ¶ 5.

As a result of the ADR process (including the extensive review of the Pre-Mediation Payroll Data), mediation, and settlement negotiations, the Parties have agreed fully and finally to

resolve the Action on the terms and conditions described in the accompanying Settlement Agreement.

Plaintiff now presents the Settlement Agreement to the Court for its approval. The Settlement offers significant advantages over the continued prosecution of this case: Plaintiff and the other Settlement Collective Members will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendants would assert various defenses to their liability. The Parties have spent considerable time analyzing the data and negotiating and drafting the Settlement Agreement, which ensures that all Settlement Collective Members are provided with notice of the Settlement Agreement and its terms.

### III.    THE TERMS OF THE SETTLEMENT AGREEMENT

#### A.  The Settlement Collective Members

The Agreement provides that the Settlement Collective Members include Plaintiff and the 565[1] other individuals who filed opt-in consent forms with the Court, and covers the time period for the period beginning three years prior to the date that the individual filed their opt-in consent form in this Action and ending on May 4, 2025. Agreement ¶12(r, x).

The Parties have stipulated that for settlement purposes only, final certification of the Settlement Collective as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) is appropriate. Each Settlement Collective Member will be fully advised of this Settlement with the Notice of Settlement.

---

[1] 16 of these individuals did not have any workweeks in the applicable statutory time period. The Parties have agreed to include these individuals in the Settlement, and each will receive the minimum amount provided for in paragraph 22 of the Settlement Agreement in exchange for their release of claims.

### B. Calculation and Distribution of the Net Settlement Amount

The Gross Settlement Amount to be paid by Defendants is Two Million Six Hundred Thousand Dollars and Zero Cents ($2,600,000.00). Agreement ¶11(i). The Gross Settlement Amount includes amounts to cover: (i) Ten Thousand Dollars ($10,000.00) in total to the Plaintiff for his efforts in bringing and prosecuting this matter and for his broader release of claims in favor of Defendants; (ii) Plaintiff's Counsel's attorneys' fees not to exceed one-third (1/3) of the Gross Settlement Amount, plus Plaintiff's Counsel's out-of-pocket costs; and (iii) settlement administration costs in an amount not to exceed $8,885.  After deductions of these amounts, what remains of the Gross Settlement Amount is the "Net Settlement Amount".

The Net Settlement Amount will be distributed to the Settlement Collective Members in accordance with the following objective formula:

- $50 per Settlement Collective Member will be deducted from the Net Settlement Amount prior to the determination of pro rata individual settlement shares and allocated to each Settlement Collective Member so that each Settlement Collective Member receives at least $50 in exchange for their release in this Settlement Agreement.

- In addition to the $50 payment set out in (a) above, Settlement Collective Members shall receive a pro rata portion of the Net Settlement Amount as follows:

  - For each workweek in the Relevant Time Period during which the Settlement Collective Member worked in a covered position, the Settlement Collective Member shall receive one (1) settlement share.

  - The total number of settlement shares for all Settlement Collective Members in the Relevant Time Period will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Settlement Collective Member's number of settlement shares to determine the Settlement Collective Member's Settlement Award.

*Id*. ¶ 22

All Settlement Award checks to Settlement Collective Members shall remain negotiable for one-hundred eighty (180) days from the date they are issued ("Check-Cashing Period"). The

Settlement Administrator shall send a reminder letter via U.S. mail and e-mail to those who have not yet cashed their settlement check after sixty (60) days, and may call those that have still not cashed their check to remind them to do so during the last sixty (60) days of the Check-Cashing Period. Any amounts from uncashed settlement checks after the close of the Check-Cashing Period will be cancelled, and the Settlement Administrator shall pay the funds associated with those checks to the unclaimed property fund of the state in which the applicable Settlement Collective Member worked for Defendant(s) in the name of and for the benefit of the Settlement Collective Member *Id*. ¶ 27.

For tax purposes, fifty percent (50%) of the Settlement Awards to Settlement Collective Members will be considered wages subject to the withholding of all applicable local, state, and federal taxes. *Id*. ¶ 26. The remaining fifty percent (50%) of the Settlement Awards to Settlement Collective Members shall be considered non-wage liquidated damages. *Id*.

### C. Release of Claims

Upon entry of the Approval Order, and in exchange for the consideration set forth in this Settlement Agreement, all Settlement Collective Members (including Plaintiff) will be deemed to have released Defendants and all other Released Parties for any and all claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, that are based on or reasonably related to the claims asserted in this Action, including but not limited to any claims for unpaid overtime and gap time wages under all applicable federal and state law, including the FLSA, through May 4, 2025. *Id.* ¶ 13.

In addition, and in consideration for his Service Award, Plaintiff will provide a broader general release of claims to the Released Parties. *Id.* ¶ 14.

IV.    **ARGUMENT**

   A.  **The Proposed FLSA Settlement Should Be Approved Because it is a Fair and Reasonable Resolution of a Bona Fide Dispute**

Courts of the Southern District of West Virginia have adopted and developed a widely-accepted framework for reviewing, analyzing, and approving proposed settlements under the FLSA. *See, e.g., Hager v. Omnicare, Inc.*, No. 5:19-cv-00484, 2021 WL 5311307 (S.D. W. Va. Nov. 15, 2021); *Young v. Act Fast Delivery of W. Va., Inc.*, No. 5:16-cv-09788, 2020 U.S. Dist. LEXIS 148989, 2020 WL 4805036 (S.D. W. Va. August 18, 2020). "Courts should approve joint settlement agreements of FLSA claims 'if a proposed settlement reflects a reasonable compromise over contested issues.'" *Id.*, 2020 WL 4805036 at *1 (quoting *Senior v. Robert Newlin Airport, Inc.*, No. 3:18-1382, 2019 WL 4267488 at *2, 2019 U.S. Dist. LEXIS 152843 at *4-5 (S.D. W. Va. Sept. 9, 2019)). "This approval process embraces a relatively forgiving standard that reflects the uncertainty of the litigation process and legal and factual disagreements" between the parties. *Id.* at *1 (citations and quotation marks omitted). "Simply put, where there is an assurance of an adversarial context and where an employee is represented by an attorney who can protect his rights under the statute, a settlement will be approved." *Id.* at *1 (quotations omitted).

   "The standard for settlement approval under the FLSA is much less rigorous than the standard under Fed. R. Civ. P. 23, because Rule 23 settlements extinguish the claims of non-participating class members." *Id.* at *4 n.2. "Because the Court of Appeals for the Fourth Circuit has not yet had occasion to endorse a standard for approving FLSA settlements, 'district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*.'" *Id.* at *1, 2020 U.S. Dist. LEXIS 148989 at *4-5; *see also Mayhew v. Loved Ones in Home Care, LLC*, No. 2:17-cv-03844, 2020 WL 1492542 at *1, 2020 U.S. Dist. LEXIS 53127 at *4 (S.D. W. Va. March 26, 2020) (quoting *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407-08

(D. Md. 2014)). Under this approach, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)). In order to be approved,

> [T]he settlement must "reflect a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions," which includes a finding with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement.

*Id.* (quoting *Duprey*, 30 F. Supp. 3d at 407-08; citing *Lynn's Food Stores*, 679 F.2d at 1355). "There is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Lomascolo*, 2009 WL 3094955, at *10.

Because the claims in this case arise solely under the FLSA, no additional notice is required to be issued to the collective action members before the settlement may be approved. *See e.g., Haskett v. Uber Techs.*, Inc., 780 Fed. Appx. 25, 27 (4th Cir. 2019) ("This action only concerned claims under the FLSA. Unlike Rule 23, [the FLSA] does not require a district court to notify potential claimants about a proposed settlement.") (per curiam). The Settlement Collective Members have each made the affirmative decision to opt-in to this case. Each opt-in form thus reflects each Settlement Collective Members' respective consent to be represented by Plaintiffs' counsel, including for purposes of settlement negotiations. *See also Haskett*, 780 Fed. Appx. at 27-28 ("Haskett agreed to be bound by the final judgment whether favorable or unfavorable . . . he could have commenced his own lawsuit if he did not join the collective.").

### B.  A *Bona Fide* Dispute Existed Between the Parties

Under *Lynn's Food Stores*, a district court may find that a proposed settlement agreement resolves a *bona fide* dispute. Here, with regard to the wage claims at issue in this case as set forth

in the Complaint, the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following:

1) whether the alleged unpaid work is compensable pre and post shift work under the FLSA, *See, e.g., Perez v. Mountaire Farms, Inc*., 650 F.3d 350, 367 (4th Cir. 2011);
2) the amount of time it took to perform the alleged unpaid work;
3) whether Defendants would be able to meet their burden of demonstrating good faith, such that they would avoid the imposition of liquidated damages;
5) whether Plaintiff could maintain a collective action status of the action; and
6) whether the Parties would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages.

*See* Ex. 2, Goodwin Decl. ¶ 13.

Accordingly, a *bona fide* dispute over FLSA provisions exists here. Ultimately, the Gross Settlement Amount agreed upon represents a compromised resolution on these issues, accounts for the risks of litigation, and provides certain, immediate, and meaningful payment for the workers in this case for the time period at issue.

### C.  The Proposed Settlement is Fair and Reasonable

In assessing whether a proposed settlement is fair and reasonable, the court must consider six non-exhaustive factors: "(1) [T]he extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits and (6) the amount of the settlement in relation to the potential recovery." *Hager*, 2021 WL 5311307 at *6.

The first three factors favor approval of the settlement. Although the case settled at a relatively early stage, the Parties have fully analyzed the pertinent factual and legal issues in this case, and have assessed the strengths and weaknesses of the claims and defenses at issue. The Settlement reached represents an excellent result for the Settlement Collective Members. There is

no indicia of fraud or collusion with respect to this proposed Settlement, which was reached after arm's-length negotiations, including a full day mediation session conducted by an experienced wage and hour mediator, and after (1) the exchange of substantial data and analyses, and (2) several meet and confers regarding potential exposure. Ultimately, represented by experienced counsel, and with assistance of an experienced mediator, Plaintiff has agreed to this Settlement as a fair and reasonable resolution of this case. *See generally* Ex. 2, Goodwin Decl.

As to the fourth factor, Plaintiff, represented by experienced counsel, and with the assistance of experienced mediator Dennis Clifford, Esq., ultimately agreed to this Settlement as a fair and reasonable resolution of the action, *see* Ex. 2, Goodwin Decl. ¶¶ 8-15; Ex. 3, Schalman-Bergen Decl. ¶¶ 18-21; Ex. 4, Draher Decl. ¶¶ 8-12. Plaintiff's Counsel are experienced and respected class and collective action litigators, including in the area of employment law, and all three of Plaintiff's Counsel firms have litigated and settled similar claims in the coal mining industry. *See* Ex. 2, Goodwin Decl. ¶¶ 4-16; Ex. 3, Schalman-Bergen Decl. ¶¶ 4-23; Ex. 4, Draher Decl. ¶¶ 6-14. As a court in this district previously found, Plaintiff's Counsel at Goodwin & Goodwin, LLP and Lichten & Liss-Riordan, P.C. "have been pioneers in workers' rights and wage and hour cases over the past decade and the firm's attorneys are highly experienced." *Hager*, 2021 WL 5311307, at *7. Based on Plaintiff's Counsel's knowledge and expertise, they believe this settlement will provide a substantial benefit to the Settlement Collective.

Regarding the fifth factor, while Plaintiff believes the case was very strong, the outcome of the litigation is far from certain and, if not settled, would require significant factual development, and would be subject to the risk that even a favorable verdict at trial could be delayed based on any appeals by Defendants. A trial on the merits would involve significant risks for Settlement Collective Members given the disputed serious questions of law and fact in the case,

including – as in any FLSA case – the risk that the Settlement Collective Members would not succeed in obtaining and then maintaining a collective through trial.

The final factor also supports settlement. The Settlement provides an excellent result to Settlement Collective Members. Ex. 2, Goodwin Decl. ¶ 14. Plaintiff's Counsel engaged in an extensive analysis of the data provided and performed damages calculations using assumptions about the amount of time worked in each workweek that appeared in data provided by Defendants, and the rate of overtime they would have been owed if Plaintiff prevailed on all claims.

Ultimately, the Settlement that the Parties reached with the assistance of the mediator reflects what Plaintiff's Counsel believes to be a fair and reasonable settlement of disputed claims that takes into account the risks that Plaintiff would face if the case proceeded in litigation, and which compares favorably to similar settlements in this industry. *See* Ex. 2, Goodwin Decl. at ¶ 14-15; Ex. 3, Schalman-Bergen Decl. at ¶ 18-22; Ex. 4, Draher Decl. at ¶¶ 8-12.

The likely risks, complexity, delay and expense of proceeding with litigation are clearly outweighed by the substantial and immediate financial and going forward relief presented by this excellent Settlement. Assuming approval, the Net Settlement Amount will be distributed to the Settlement Collective under an allocation formula that credits individuals with settlement shares for each workweek in which they worked during the Relevant Time Period, and which provides for a minimum payment to each Settlement Collective Member. Accordingly, these factors support approval of the settlement as fair and reasonable.

### D.   The Proposed Settlement Furthers the Purpose of the FLSA

The Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. Indeed, the Settlement furthers the purposes of the FLSA by providing Plaintiff and the Settlement Collective Members with substantial recovery of their alleged unpaid overtime, that they may have otherwise been

unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency…"). Because the Settlement advances the goals of the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

### E.  The Service Award to Plaintiff is Justified and Should be Approved

The settlement provides for a service award to Plaintiff in the amount of Ten Thousand Dollars ($10,000.00), in recognition of his efforts in bringing and prosecuting this matter on behalf of the proposed Settlement Collective. He will also provide a broader release against Defendants. Subject to Court approval, this amount will be paid in addition to Plaintiff's individual settlement award from the Net Settlement Amount as a member of the Settlement Collective under the Agreement. The payment constitutes approximately 0.4% of the Gross Settlement Fund.

Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest. *Thacker v. PHH Mortg. Corp.*, No. 5:21-CV-00174-JPB, 2022 WL 22826981, at *8 (N.D.W. Va. Nov. 14, 2022). Courts in this Circuit routinely approve as reasonable service awards of similar amounts to compensate named plaintiffs to account for the risk to themselves, the assistance provided to counsel, and efforts in securing relief on behalf of other individuals. *See, e.g., Adkins v. Midland Credit Mgmt., Inc.*, No. 5:17-CV-04107, 2022 WL 327739, at *7 (S.D.W. Va. Feb. 3, 2022) (approving $10,000 service award and noting that at least one court has said that incentive awards are "routinely approved," and further holding that "class members would have received nothing had Plaintiffs not been willing to step

up and file this action.").[2]

Here, Plaintiff worked extensively with Plaintiff's Counsel providing valuable background information about his employment, about Defendants' policies and practices, and about the allegations in the lawsuit, and regularly conferred with Plaintiff's Counsel. Ex. 2, Goodwin Decl. at ¶ 18; Ex. 3, Schalman-Bergen Decl. at ¶ 25; Ex. 4, Draher Decl. at ¶ 15.  He agreed to put his name on a lawsuit in the public docket, and by doing so, Plaintiff's Counsel believes he undertook a substantial direct and indirect risk in the community and in his field of employment by being the face of the litigation in order to participate in this case on behalf of his former fellow employees. *Id*. Plaintiff spent a great amount of time assisting Plaintiff's Counsel with this matter, including providing information and documents to Plaintiff's Counsel, he worked closely with counsel to prepare for the mediations and provided critical information. *Id*. Plaintiff also communicated with Plaintiff's Counsel throughout the settlement process and reviewed and approved the proposed settlement agreement. *Id*. As a result of Plaintiff's active assistance in prosecuting this case, Settlement Collective Members will receive a significant benefit in the form of monetary compensation for alleged unpaid wages. *Id*. Accordingly, the Service Award to Plaintiff should be approved.

### F.  The Request for Plaintiff's Counsel's Fees Should Be Approved

Finally, Plaintiff's Counsel's request for attorney's fees of $866,666, or one-third of the Gross Settlement Amount, as well as reimbursement of costs is reasonable and should be approved. An award of attorney's fees under the FLSA is mandatory:  the FLSA provides that the "court . . .

---

[2] *See also Thacker*, 2022 WL 22826981, at *8 (approving $10,000 service award and holding that "the purpose of such awards is to encourage socially beneficial litigation"); *Chrismon v. Pizza*, No. 5:19-CV-155-BO, 2020 WL 3790866, at *6 (E.D.N.C. July 7, 2020) (approving $10,000 service award in wage and hour case and citing cases approving $10,000 service awards); *Dijkstra v. Carenbauer*, No. 5:11-CV-00152, 2016 WL 6804980, at *6 (N.D.W. Va. July 12, 2016) (approving service award of $10,000 as reasonable).

*shall*, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added).

Awarding attorneys' fees as a percentage of the benefit to the class is the preferable and prevailing method of determining fee awards in actions that establish common funds for the benefit of a group. *Adkins*, 2022 WL 327739, at *3. "Although the Fourth Circuit has not determined the preferred method for calculating attorney fees where the common fund has been generated on behalf of a class, nearly all circuits, as well as district courts within this Circuit, that have considered the issue have found that the trial court may use the percentage method." *Dijkstra v. Carenbauer*, No. 5:11-cv-152, 2015 WL 12750449, at *6 (N.D.W. Va. July 29, 2015).

"Both state and federal courts in West Virginia recognize the presumptive reasonableness of an attorneys' fee equal to one-third of a recovery." *Adkins*, 2022 WL 327739, at *5. As explained in *Eriksen Const. Co., Inc. v. Morey*, 923 F. Supp. 878, 881 (S.D. W. Va. 1996):

> The Court notes a one-third contingency fee is presumptively reasonable in West Virginia. *See Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352, S.E.2d 73, 80 (1986). Nevertheless, a forty percent (40%) contingency fee is a common fee contract provision for cases that proceed to trial.

*Id.*; *see also F.S.&P. Coal Co. v. Inter-Mountain Coals, Inc.*, 179 W. Va. 190, 366 S.E.2d 638 (1988) (a one-third attorneys fee is the "going rate" in contingency fee cases).

Some courts also consider the certain factors in analyzing the reasonableness of fees determined by the percentage of recovery method. *Hager*, 2021 WL 5311307, at *9. These factors can include:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised, (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which

the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Id.* As explained below, application of these factors supports approval of the requested fee in this case. Plaintiff addresses these factors by order of importance.

### G.  Amount Involved and High Degree of Success Obtained (Factor 8)

Here, the Gross Settlement Amount of $2,600,000 is an excellent recovery for the Settlement Collective Members in view of the difficulties and risks that plaintiffs face in any complex wage and hour litigation to prevail on the merits and to obtain and maintain certification of a collective. *See* Ex. 2, Goodwin Decl. ¶¶ 8-15; Ex. 3, Schalman-Bergen Decl. ¶¶ 18-23; Ex. 4, Draher Decl. ¶¶ 8-13. Among other things, aside from disputing generally that the at-issue work was even compensable, Defendants disputed the actual amount of time the miners spent performing the pre and post- shift work at issue in the case. *Id*.

The collective experience of Plaintiff's team of law firms in litigation generally, and similar FLSA matters specifically, without question contributed to achieving the excellent settlement at this stage of the litigation. The result reached in this matter strongly supports the requested fee. *See Hager*, 2021 WL 5311307, at *9–11 (approving one-third fee award and considering that "the amount obtained for Plaintiffs is substantial and reflects a significant percentage of the amount in controversy in this case").

### H.  Customary Fee and Awards in Similar Cases and Whether the Fee is Fixed or Contingent Supports the Requested Fee (Factors 4, 5, 6, 10 and 12)

Plaintiff's Counsel seek a fee award of one-third of the Gross Settlement Amount. As noted above, this percentage is "presumptively reasonable" in West Virginia contingency cases, and is the percentage generally approved by courts in this district and Circuit in similar cases. *Adkins*, 2022 WL 327739, at *5. For example, the Southern District of West Virginia approved a one-third fee award in an FLSA collective action settlement. *See, e.g., Hager*, 2021 WL 5311307, at

*9–11.[3]

Moreover, the fact that Plaintiff's Counsel agreed to represent Plaintiff and the proposed Settlement Collective on a contingent basis also supports approval of the requested fee. By permitting clients to obtain attorneys without having to pay hourly fees, contingent fee arrangements provide critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. And here, Plaintiff's Counsel pursued this action on a complete contingent basis and has spent time and expended significant costs to pursue this matter, with no guarantee of recovery.  Plaintiff's Counsel advanced all costs, and, had there been no recovery, Plaintiff's Counsel would not have been paid a fee or reimbursement of their expenses. Ex. 2, Goodwin Decl. ¶¶ 24-25.  *See, e.g., Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-CV-6292, 2022 WL 501206, at *10 (S.D. Ohio Jan. 19, 2022) ("Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award."

---

[3] *See also, e.g.,  Chrismon v. Pizza*, No. 5:19-CV-155-BO, 2020 WL 3790866, at *5 (E.D.N.C. July 7, 2020) (approving one third fee award and citing cases); *Devine v. City of Hampton, Virginia*, No. 4:14-cv-81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015) (settlement agreement provided attorney's fees in the amount of approximately 33% of the settlement fund); *Hatzey v. Divurgent, LLC*, No. 2:18-cv-191, 2018 WL 5624300, at *4 (E.D. Va. Oct. 9, 2019) (awarding one-third of settlement fund of $2,450,000); *Hoffman v. First Student Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *3 (D. Md. March. 23, 2010) ("Under the FLSA and the terms of lead class members' agreement with counsel, Plaintiffs' counsel may recover one-third of the damages award. Because this amount appropriately reflects the time spent and expenses incurred by Plaintiffs' counsel in this litigation, fees and costs are reasonable and appropriate"); *DeWitt v. Darlington Cty., S.C.*, No. 11 Civ. 740, 2014 WL 6408371, at *9 (D.S.C. Dec. 6, 2013) (noting that "[o]ne-third of the recovery appears to be a fairly common percentage in contingency cases, especially where the settlement amount is not-so large as to produce a windfall"); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014) (upholding attorneys' fee award of one third of $3,050,000 settlement fund); *Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 WL 2285972, at *6 (S.D.W. Va. May 23, 2013) (awarding one third of settlement amount as attorneys' fee award); *Montague v. Dixie Nat. Life Ins. Co.*, No. 09 Civ. 687, 2011 WL 3626541, at *2-3 (D.S.C. Aug. 17, 2011) (finding 33% attorneys' fee award reasonable).

(quotation marks and citation omitted)).  Indeed, in light of such risks, Plaintiff's Counsel typically pursues contingent fee matters at an agreed-upon rate of 40 percent of any gross recovery, plus reimbursement of expenses—further evidence of the reasonableness of a one-third contingent fee in this matter.  Ex. 2, Goodwin Decl. ¶ 17.

The significant investment of time and financial resources and the risk of nonpayment also relates to the undesirability of the case (factor 10).  And further, because of the time and labor required to prosecute this FLSA case, Plaintiff's Counsel were "precluded by the ticking of the clock from taking certain other cases given that they [had] decided to take a chance on a possible recovery in a contingent fee case." *Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013).  Thus, the "preclusion of other employment" factor (factor 4) also supports approval of the requested fee. *Id*.

Further, relevant here, the FLSA is a remedial statute designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective, which is ensuring that every employee receives "a fair day's pay for a fair day's work"). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of this statute. Otherwise, highly-skilled counsel would shy away from risky and expensive litigation (like this case) and employees seeking to have their rights vindicated would have difficulty obtaining qualified counsel.

## I.  Novelty and Difficulty of Question Presented by the Case, Skill Required to Perform the Legal Service Properly, and Experience of Plaintiff's Counsel (Factors 2, 3, and 9)

As described above, this case involves numerous disputed issues of fact and law, including primarily: 1) whether and the extent of which the alleged pre and post shift work performed is compensable under the FLSA; and 2) amount of time the Collective Members spent performing the alleged work. Defendants denied liability and denied that the potential Settlement Collective

members were "similarly situated" and Plaintiff would face barriers in attaining and maintaining a collective. Thus, an outcome of zero recovery for the Plaintiff and Settlement Collective remained possible. Plaintiff's Counsel accepted these risks, and negotiated a substantial recovery.

The wage and hour issues in this matter are governed by highly technical and constantly-evolving federal FLSA law and regulations. *See, e.g., Genesis Healthcare Corp.*, 569 U.S. at 74 (noting that FLSA collective actions are "fundamentally different" from typical class actions). As evidenced by the accompanying Declarations, Plaintiff's Counsel have significant litigation experience, and focus their practices on and have extensive experience in representing workers in wage and hour litigation nationwide, including class and collective actions. *See* Ex. 2, Goodwin Decl. ¶¶ 4-16; Ex. 3, Schalman-Bergen Decl. ¶¶ 3-23; Ex. 4, Draher Decl. ¶¶ 6-13. And Plaintiff's Counsel have prosecuted similar actions involving allegations of unpaid pre and post shift time in this industry, which permitted them to bring efficiencies to bear when litigating this matter. *Id.*

Counsel have demonstrated their ability by achieving excellent results for the Settlement Collective in this case. The Settlement reached, which involves complex provisions that are specific to Section 216(b)'s collective action provision of the FLSA, is a reflection of Plaintiff's Counsel's experience. This Settlement was reached after a full day mediation session and the substantial exchange and review of documents and data. *See generally* Ex. 2, Goodwin Decl. The Settlement provides Plaintiff and the Settlement Collective Members with substantial benefits without having to wait for potentially many more years of drawn-out litigation.

### J. Time and Labor Required (Factor 1)

Here, the benefits to Plaintiff and the Settlement Collective Members are substantial and demonstrate the reasonableness of the requested fee. As discussed throughout, the Settlement provides certain, immediate, and meaningful payment for the workers in this case for the time period at issue. The settlement was reached at an early stage as a result of the experience of

Plaintiff's Counsel in similar matters, and such experience was brought to bear in resolving the instant litigation. *See, e.g., Mazola v. The May Department Stores Co.*, 1999 WL 1261312, *2 (D. Mass. Jan. 27, 1999) (noting that the "percentage of the common fund" approach "may be appropriate for the counsel that innovated the cause of action, and took all the risks," in contrast to "counsel that takes advantage of the efforts of others who have . . . done the 'spadework'") (citations omitted).[4] Against this backdrop, the request for attorneys' fees here is further justified by the substantial monetary benefits conferred by the settlement in this case.

Plaintiff's Counsel (consisting of a team of at least nine experienced litigators, plus multiple paralegals, spanning 3 different law firms) dedicated extensive time and resources to date investigating and bringing this case to a successful settlement for the benefit of the Settlement Collective. Such efforts have included: developing the legal theories of Defendants' wage and hour violations; conducting substantial legal and factual research on the alleged violations; communicating with and interviewing collective members about their work experiences; conducting many in-person meetings at various locations across the Southern District; fielding frequent electronic and telephonic inquiries from the miners who opted-in to the litigation; engaging in extensive ADR-related discovery; performing an in-depth review of the data and information exchanged, including significant data analysis; attending pre-mediation sessions with

---

[4] *See also Arp v. Hohla & Wyss Enterprises, LLC*, No. 3:18-CV-119, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020) (explaining that "[a] firm's expertise in a niche area provides important context when analyzing the reasonableness of a[ttorneys'] fees" as "[f]or example, Class Counsel's success on a specific type of case or specific issue augments their ability to obtain a favorable result in cases of the same type" and approving fee request to counsel with significant experience in wage and hour issues related to restaurant delivery drivers); *Starnes v. Amazon.com, Inc.*, No. 23-CV-484, 2023 WL 3305159, *11 (E.D. Pa. May 8, 2023) (finding Judge Rice's rationale in *Arp* to be persuasive in approving fee award, and holding that Lichten & Liss-Riordan's efforts in other similar matters that "directly benefited the class in this case" further justified and supported the requested one-third fee award).

the mediator and an in-person, all day mediation session in Charleston; conducting telephonic and video meet and confer sessions; and finalizing the Settlement Agreement. *See* Ex. 2, Goodwin Decl. ¶¶ 8-21; Ex. 3, Schalman-Bergen Decl. ¶¶ 18-28; Ex. 4, Draher Decl. ¶¶ 8-18. Moreover, Plaintiff's Counsel will perform additional work that will be necessary to bring this settlement to a conclusion, including overseeing the administration of the settlement[5]. *Id*. The time expended supports the requested fee.

### K.  Plaintiff's Counsel's Costs Should Be Approved

In addition to reasonable attorneys' fees, the FLSA provides for reimbursement of "costs of the action." *See* 29 U.S.C. § 216(b). Plaintiff's Counsel has incurred and seeks reimbursement of costs in the total amount of $35,293.90, as set forth in Plaintiff's Counsel's accompanying Declarations. *See* Ex. 2, Goodwin Decl. ¶ 28; Ex. 3, Schalman-Bergen Decl. ¶ 35; Ex. 4, Draher Decl. ¶ 22.

These costs include reasonable out-of-pocket expenditures. These expenses reflected in the accompanying Declarations are of the type typically billed by attorneys to paying clients, such as mediation costs, filing fees, notice administration, travel and legal research costs. All of these expenses were reasonable and necessary for the successful prosecution of this case. Plaintiff's Counsel advanced these costs, with no guarantee of recovery. These costs should be approved as reasonable.

---

[5] Plaintiff's Counsel have collectively dedicated more than 1,345.5 hours to this matter to date. *See* Ex. 2, Goodwin Decl. ¶¶ 20-22; Ex. 3, Schalman-Bergen Decl. ¶ 29-31; Ex. 4, Draher Decl. ¶ 17-18. Using Plaintiff's Counsel's normal hourly rates, Plaintiff's Counsel's combined lodestar exceeds $564,618.75, resulting in a multiplier of less than 1.53, which is well within the range of, and indeed far lower than multipliers that obtain approval in the Southern District of West Virginia. *See, e.g., Hager*, 2021 WL 5311307, at *9 (2.84 multiplier on one third fee request approved); *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 470 (S.D.W. Va. 2010) (upholding a lodestar multiplier range of 3.4 to 4.3 and observing that "[c]ourts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee").

## V.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court grant this Motion and enter the accompanying Proposed Order.

Dated:  April 14, 2025

**PLAINTIFF ANDREW TOLLIVER**

By his attorneys,

*/s/ R. Booth Goodwin II*
R. Booth Goodwin II (WVSB #7165)
Benjamin B. Ware (WVSB #10008)
W. Jeffrey Vollmer (WVSB #10277)
Stephanie H. Daly (WVSB #8835)
**GOODWIN & GOODWIN, LLP**
300 Summers Street, Suite 1500
Charleston, WV 25301
Telephone: (304) 346-7000
rbg@goodwingoodwin.com
bbw@goodwingoodwin.com
wjv@goodwingoodwin.com
shd@goodwingoodwin.com

Harold L. Lichten (*pro hac vice*)
Sarah R. Schalman-Bergen (*pro hac vice*)
Krysten L. Connon (*pro hac vice*)
Olena Savytska (*pro hac vice*)
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
hlichten@llrlaw.com
ssb@llrlaw.com
kconnon@llrlaw.com
osavytska@llrlaw.com

Shannon M. Draher (*pro hac vice*)
**NILGES DRAHER LLC**
7034 Braucher Street, NW, Suite B
North Canton, Ohio 44720
Telephone: 330-470-4428
Facsimile: 330-754-1430

Email: sdraher@ohlaborlaw.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
(Charleston Division)**

| | |
|---|---|
| **ANDREW TOLLIVER**, on behalf of himself and all others similarly situated, **)** | |
| **)** | |
| **)** | Case No. 2:24-cv-00128 |
| Plaintiff, **)** | |
| **)** | |
| vs. **)** | |
| **)** | |
| **ALPHA METALLURGICAL RESOURCES, INC., MARFORK COAL COMPANY, LLC, SPARTAN MINING, LLC, ARACOMA COAL COMPANY, LLC, and PARAMONT CONTURA, LLC,** **)** | |
| **)** | |
| **)** | |
| Defendants. **)** | |

## CERTIFICATE OF SERVICE

I, R. Booth Goodwin II, hereby certify that on April 14, 2025, a true and correct copy of the foregoing "**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF THE FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT**" was filed via CM/ECF on the following counsel of record:

Joseph U. Leonoro (WVSB No. 10501)
STEPTOE & JOHNSON PLLC
707 Virginia Street East, 17th Floor
Charleston, WV 25301
T: (304) 353-8162
joseph.leonoro@steptoe-johnson.com

Kevin White (D.C. Bar No. 998809)
HUNTON ANDREWS KURTH, LLP
2200 Pennsylvania Avenue, N.W.
Washington DC, 20037
T: (202) 955-1500
kwhite@huntonak.com

Ryan A. Glasgow (VA Bar No. 71023)
Tyler Laughinghouse (VA Bar No. 84099)
HUNTON ANDREW KURTH, LLP
951 East Byrd Street
Richmond, VA 23219
T: (804) 788-8200
rglasgow@huntonak.com
tlaughinghouse@huntonak.com

*Counsel for Defendants*

*/s/ R. Booth Goodwin II*
R. Booth Goodwin II (WVSB #7165)